1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HUNG VIET VU,

        Petitioner,               No. CIV S-07-0495 MCE GGH P

    vs.

RICHARD KIRKLAND, et al.,

        Respondents.         <u>ORDER</u>

_____/

       On December 15, 2008, this court dismissed as untimely petitioner's amended habeas petition filed April 11, 2008, pursuant to the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A).  On January 7, 2010, the Court of Appeals vacated this court's dismissal order, and remanded the action for exercise of this court's informed discretion whether to accept the amended petition *nunc pro tunc* to a timely date.  The mandate issued on January 28, 2010. For the following reasons, in the express, informed discretion of the undersigned, the amended petition should not be filed *nunc pro tunc* to a date which would make it AEDPA timely.

      <u>BACKGROUND</u>

       Plaintiff was convicted on March 15, 2004 of first degree murder, and sentenced on April 14, 2004 to life without the possibility of parole.[1]  The conviction was affirmed on

_____

[1] Specifically, a jury found petitioner guilty of first degree murder of Hoa Thanh Nguyen, and found true a gang enhancement pursuant to Cal. Penal Code § 186.22(b)(1), a firearm enhancement pursuant to Cal. Penal Code § 12022.53, and a special circumstance pursuant to Cal. Penal Code § 190.2(a)(21).  Respondent's Lodged Item No. 1, at 1-2 (Docket No. 28, California Court of Appeal unpublished decision).  The jury also found Petitioner guilty of assault with a firearm on Ha Van

1   appeal on December 13, 2005, and the California Supreme Court denied review on March 15,

2   2006.  Docket No. 22, at 1-2 (Amended Petition), and attached documents.  Petitioner did not file

3   a petition for writ of certiorari with the United States Supreme Court, id., rendering his

4   conviction final upon expiration of the 90-day period for seeking such review, Bowen v. Roe,

5   188 F.3d 1157, 1158-1159 (9th Cir. 1999); Supreme Court Rule 13.

6          Plaintiff's conviction became final on June 14, 2006, and the one-year limitations

7   period of § 2244(d)(1)(A) for filing a habeas petition in this court commenced running the

8   following day, June 15, 2006.  See 28 U.S.C. § 2244(d)(1)(A) (petition must be filed within one

9   year from "the date on which the judgment became final by the conclusion of direct review or the

10  expiration of the time for seeking such review"); Fed. R. Civ. P. 6(a) ("When the period is stated

11  in days . . . .exclude the day of the event that triggers the period); Patterson v. Stewart, 251 F.3d

12  1243, 1246 (9th Cir. 2001) (applying Rule 6(a) to limitations period set forth in the Antiterrorism

13  and Effective Death Penalty Act of 1996 ("AEDPA")).

14         The last day to file a federal habeas petition was June 14, 2007, absent any tolling

15  of this period due to the pendency of properly filed applications for post-conviction or other

16  collateral review in state court.  See 28 U.S.C. § 2244(d)(2); Patterson v. Stewart, supra, 251

17  F.3d at 1247; cf., Duncan v. Walker, 533 U.S. 167, 173-174, 121 S.Ct. 2120

18  (2001) (properly filed federal habeas petition does not toll statute of limitations).

19         Petitioner pursued one state court collateral action, filed February 7, 2007 in

20  Sacramento County Superior Court.  See, Respondent's Lodged Item No. 3 (Docket No. 28);

21  Houston v. Lack, 487 U.S. 266 (1988) (delivery by pro se prisoner to prison authorities of papers

22  for mailing to court deemed filed upon delivery).  The state petition was denied on May 10, 2007

23  (Lodged Item No. 4), thus tolling the one-year statute of limitations under AEDPA for a period of

24  _____

25  Nguyen, and found true a firearm enhancement and gang enhancement.  Id. at 1-2.  Petitioner was
    sentenced to a term of life without the possibility of parole for the murder conviction, a consecutive
26  term of twenty-five years to life for the associated firearm enhancement, and a determinate sentence
    of seventeen years for the assault conviction and associated enhancements.  Id. at 2.

94 days.

Thus, petitioner's deadline for filing his federal habeas petition, as all parties would now agree, was September 14, 2007.[2]

Petitioner filed his initial federal habeas petition in pro se on March 14, 2007 – nearly six months prior to the expiration of the statute of limitations.  The petition listed five grounds for relief, Docket No. 1, at 2, reflecting the issues petitioner exhausted before the California Court of Appeal and California Supreme Court, and referred to "attachments setting forth all factual and legal grounds on which relief is sought," id. at 5.  However, no documents were attached.  Soon after filing, on April 9, 2007, the magistrate judge appointed the Federal Defender to represent petitioner, "[i]n light of the length of petitioner's sentence" and "the interests of justice."  Docket No. 3, at 1.  Defense counsel was required to inform the court whether an amendment to the petition would be forthcoming.  Id. at 2.  On April 24, 2007, at the request of the Federal Defender, attorney Krista Hart was substituted as petitioner's appointed counsel.

On May 9, 2007, the parties timely filed a Joint Scheduling Statement wherein petitioner's counsel sought until July 8, 2007 "to file either (1) a statement stating that petitioner will stand on the existing petition and memorandum of points and authorities; (2) an amended petition that will proceed on exhausted claims; or (3) an amended petition that identifies both exhausted and unexhausted claims, demonstrates good cause for having failed to exhaust state court remedies as to any claims, and expresses any intention to pursue unexhausted claims."  Docket No. 6, at 1-2.

The magistrate judge granted the request, requiring that by July 8, 2007, petitioner

---

[2] Significantly, this date was clarified on appeal, not before this court, and therefore not readily apparent either to the magistrate judge or the undersigned.  As stated in the court's order filed December 15, 2008, "Because Petitioner's state habeas proceedings tolled the running of the federal statute for a length of time not clear from the papers, the exact date of the expiration of the limitations period has not been decided."  Docket No. 35, at 5, n. 1.

was to file, *inter alia*, an amended petition.  Docket No. 10, at 1.

On July 8, 2007, petitioner's counsel sought an extension of the deadline to September 10, 2007, stating that she was still obtaining court records.  Docket No. 12, at 1-2.  The magistrate judge granted the request, again clarifying that, "On or before September 10, 2007, petitioner shall file either a statement that he shall stand on the existing petition, an amended petition containing exhausted claims, or an amended petition containing exhausted and unexhausted claims and a request to hold this action in abeyance pending further exhaustion."  Docket No. 13, at 1.

On September 14, 2007, petitioner made a  request to extend the deadline to November 19, 2007.  Docket No. 14, at 1-2.  The request was granted by order of the magistrate judge filed October 24, 2007.  Docket No. 15, at 1.

On January 10, 2008, the magistrate judge issued an order directing petitioner to show cause why no filing had been made.  Docket No. 16.  Petitioner's counsel responded, describing her heavy case load and oversight in filing a request that reflected the parties' agreement to a 60-day extension of time.  Docket No. 17, at 2-3.  On January 29, 2008, the magistrate judge discharged the order to show cause and granted petitioner an extension of thirty days.  Docket No. 18.

Petitioner's counsel sought yet another extension of time on March 3, 2008, on the ground that she needed "additional time to complete the legal research necessary prepare the amended petition."  Docket No. 19, at 1-2.  The magistrate judge granted the request on March 11, 2008, but stated that "[n]o further requests for extension of time will be granted but for substantial cause."  Docket No. 20.

One day after the deadline, on April 11, 2008, petitioner's counsel filed the amended petition and requested a one-day extension of the deadline, again citing her heavy caseload.  Docket No. 21, 22.  The magistrate judge granted the request, and deemed the amended petition timely filed.  Docket No. 23.

1    Thereafter, respondent moved to dismiss the amended petition on the ground that

2   it was filed beyond the one-year statute of limitations period contained in 28 U.S.C. §

3   2244(d)(1)(A), and could not relate back to the filing date of the original petition because the

4   latter failed to meet the essential briefing requirements set forth in Rule 2(c), Federal Rules

5   Governing Habeas Cases Under Section 2254.[3]  See Docket No. 26 (Motion to Dismiss).

6   Petitioner opposed the motion, and respondent filed a reply.  Docket Nos. 30, 31.

7    The magistrate judge held a hearing on the motion on September 4, 2008, and, in

8   findings and recommendations filed September 15, 2008, recommended that the motion be

9   denied.  Docket No. 33.  The magistrate judge found that petitioner adequately identified his

10  claims in the original petition, and that the amended petition should relate back to the filing date

11  of the original petition.  See Fed. R. Civ. P. 15(c).  The magistrate judge reasoned:

> Although not a model of clarity, it is clear that the original petition intended to raise all claims raised on direct appeal in state court, which were identified in the original petition.  It also appears that petitioner meant to attach his state appellate briefing to the original petition which described the claims in more detail but inadvertently failed to do so.
>
> "Pro se petitioners may not be held to the same technical standards as litigants represented by counsel." Corjasso v. Ayers, 278 F.3d 874, 878 (9th Cir. 2002), citing Holiday v. Johnston, 313 U.S. 342, 350, 61 S.Ct. 1015 (1941) (pro se petition for habeas corpus "ought not to be scrutinized with technical nicety"); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990) ("This court recognizes that it is has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements.").
>
> Because the timely filed original petition adequately identified the claims on which petitioner intended to proceed, now raised in the amended petition, albeit indirectly, this action is not barred by the statute of limitations.  Accordingly,

---

[3] Rule 2(c), Federal Rules Governing Habeas Cases Under Section 2254, provides:

The petition must:
(1)  specify all grounds for relief available to the petitioner;
(2)  state the facts supporting each ground;
(3)  state the relief requested;
(4)  be printed, typewritten, or legibly handwritten; and
(5)  be signed under penalty of perjury by the petitioner or by a person authorized to
       sign it for the petitioner under 28 U.S.C. § 2242.

1  respondent's motion to dismiss should be denied.

2  　　The undersigned rejected this analysis.  By order filed December 15, 2008, the

3  undersigned agreed with respondent that the original petition failed to provide any factual or

4  legal grounds supporting petitioner's claims for habeas relief and could not, therefore, sustain the

5  relation-back of claims set forth in the amended petition.  Petitioner's listed grounds for relief

6  merely "reiterated the grounds for the relief he had sought in state court" and, "even if construed

7  as habeas claims rather than merely as references to his state appeal, were legal conclusions

8  unsupported by any facts."  Docket No. 35, at 8.  The undersigned distinguished Corjasso, supra,

9  278 F.3d 874, relied upon by the magistrate judge.  Finding the omissions of the original petition

10 more than a technicality in the instant case, the undersignd declined to apply the equitable tolling

11 authorized by Corjasso due to the "extraordinary circumstances" presented therein, viz., by the

12 district court's improper dismissal of an original habeas petition because the cover sheet was

13 from a different district court (although corrected by petitioner with white-out and ink), and the

14 court's loss of the body of the original petition.

15 　　　　The error in Corjasso was clearly a technicality, but Petitioner's current error was
    not nearly so innocuous.  Rather, this Petitioner failed to attach any substantive
16 　　　detail regarding either the facts or the legal grounds supporting his claims for
    relief.  Thus, this Court can reach only one conclusion.  Petitioner's Original
17 　　　Petition failed to state any claim for relief and cannot sustain the relation-back of
    any claims in the Amended Complaint.

18

19 Order filed Dec. 15, 2008 (Docket No. 35), at 9.  The undersigned therefore granted respondents'

20 motion to dismiss petitioner's amended petition "because the Amended Petition was not timely

21 filed and cannot relate back to the Original Petition, which itself adequately alleged no proper

22 claims for habeas relief."  Id.

23 　　　　　The Court of Appeals found that the magistrate judge "clearly erred" upon initial

24 review of the original "grossly defective" petition, and should have "'accept[ed] [the] defective

25 petition,' but 'require[d] the petitioner to submit a corrected petition that conforms to Rule

26

2(c).'"[4] Court of Appeals Memorandum, filed January 7, 2010 (Docket No. 42 herein), at 4, 5.
The Court explained:

> The advisory committee notes to Habeas Rule 2, when read together with Rule 4's
> requirement that a judge "promptly examine" the petition, show that filers must be
> promptly notified of obvious deficiencies in their petitions so that they can timely
> correct them.  Under the Rules, the magistrate judge that examined Vu's petition
> should have promptly notified him that the petition was missing an attachment
> and therefore did not comply with Rule 2(c).  If Vu had been notified, he could
> have easily filed a corrected petition, complete with the missing attachment,
> before the limitations period expired on September 14, 2007.

Court of Appeals Memorandum Order (Docket No. 42), at 4.  However, the Court of Appeals

related that, notwithstanding the magistrate judge's error, the undersigned retained the discretion

equitably to toll the statute of limitations for the period lost to petitioner as a result of the

magistrate judge's error, in order to accept the amended filing nunc pro tunc as the operative

petition.  As explained by the Court of Appeals:

> We have held that where an error by a district court contributes to a petition's
> untimely filing, the district court has the equitable power to right its own wrong
> by accepting the untimely petition nunc pro tunc to a timely date.  Anthony v.
> Cambra, 236 F.3d 568, 574 (9th Cir. 2000).  Exercising that power is
> discretionary with the district court, and we express no opinion on whether the
> district court's ultimate decision to dismiss the amended petition as untimely was
> wrong.

> The record suggests, however, that the district court did not realize it possessed
> the equitable discretion to correct the magistrate judge's earlier error by accepting
> the amended petition nunc pro tunc to a timely date.  The district court never
> alluded to any discretionary power and treated its dismissal as required by the
> statute of limitations and the Habeas Rules, stating that it "c[ould] reach only one
> conclusion."  Even where the record on appeal is "ambiguous with regard to
> whether the district court realized it had discretion," our practice is to remand the
> case for the district court to exercise its informed discretion in the first instance.
> Beaty v. BET Holdings, Inc., 222 F.3d 607, 610 (9th Cir. 2000) (emphasis added).
> Remand is all the more warranted here, where the record so strongly indicates that
> the district court failed to realize it had discretion. We therefore vacate the district
> court's dismissal of the petition and remand for further proceedings.

> On remand, the district court should examine the totality of all relevant factors in
> deciding how to exercise its discretion. Among the factors that favor accepting

---

[4] Subsequent "Rule" citations reference the Federal Rules Governing Habeas Cases Under
Section 2254, unless otherwise noted.

1    Vu's amended petition nunc pro tunc are the harsh result of dismissal, cf. <u>Schmidt</u>
2    <u>v. Herrmann</u>, 614 F.2d 1221, 1223 (9th Cir. 1980); the magistrate judge's clear
     failure to follow the Habeas Rules; Vu's initial status as a pro se petitioner; and
     the public policy preferring dispositions of cases on their merits, <u>see</u> <u>Computer</u>
3    <u>Task Group, Inc. v. Brotby</u>, 364 F.3d 1112, 1115 (9th Cir. 2004). Among the
     factors that disfavor acceptance are the repeated negligent failure of Vu's counsel
4    to meet deadlines and the "principles of comity, finality, and federalism that
     AEDPA was intended to promote." <u>Summers v. Schriro</u>, 481 F.3d 710, 717 (9th
5    Cir. 2007) (quotation marks and citation omitted). We do not presume to
     exhaustively list all relevant factors, and leave it to the district court to weigh all
6    relevant factors in the first instance.[5]

7              Upon the Court of Appeals' issuance of its mandate, this court directed the parties

8    to file memoranda discussing the factors relevant to the court's exercise of discretion.  The court

9    has considered the positions of each party.

10             DISCUSSION

11             The undersigned notes initially that this court previously considered and rejected,

12   sub silentio, the option of equitable tolling, although this matter was not briefed by the parties.

13   <u>See</u> discussion, supra, relative to <u>Corjasso v. Ayers</u>, 278 F.3d 874.  Had petitioner proceeded

14   without appointed counsel, this court may ultimately have found it appropriate to accept the

15   amended petition nunc pro tunc, for the reasons relied upon by the magistrate judge in applying

16   the relation-back doctrine – the failure of petitioner to attach his state appellate briefing was,

17   while ultimately decisive, clearly an oversight; the original petition properly identified only

18   exhausted claims; over-strident application of technical standards to pro se litigants is disfavored;

19   and public policy favors reaching the merits of cases.

20             However, the magistrate judge's prompt appointment of counsel was intended to

21   ensure that the briefing requirements of Rule 2(c) would be timely met.  Appointed counsel had

22   the responsibility immediately to review the original petition, analogous to the responsibilities of

23   the reviewing judge pursuant to Rule 4.  It was, at least initially, reasonable for the magistrate

24

25             [5] For the record, the undersigned was aware that under the principles of *de novo* review, he
     was able to exercise any appropriate equitable discretion in reviewing the decision of the magistrate
26   judge.

judge to rely upon appointed counsel to act with due diligence to assess the adequacy of the

original petition and make timely decisions whether to file an amended petition and/or request

for stay to pursue unexhausted claims. "Explaining the details of federal habeas procedure and

calculating statutes of limitations are tasks normally and properly performed by trained counsel

as a matter of course." Pliler v. Ford , 542 U.S. 225, 231, 124 S.Ct. 2441 (2004).  Even in pro se

cases, "[a] defendant does not have a constitutional right to receive personal instruction from the

trial judge on courtroom procedure.  Nor does the Constitution require judges to take over chores

for a pro se defendant that would normally be attended to by trained counsel as a matter of

course." McKaskle v. Wiggins, 465 U.S. 168, 183-184, 104 S.Ct. 944 (1984).[6]

The magistrate judge's reliance on appointed counsel was particularly appropriate

in calculating the expiration of the statute of limitations.  See n. 2, supra (expiration date not

evident from initial petition).  As the Supreme Court has noted, district judges should not be

tasked with "the potentially burdensome, time-consuming, and fact-intensive task of making a

case-specific investigation and calculation of whether the AEDPA limitations period has already

run or will have run by the time the petitioner returns to federal court . . ." Pliler v. Ford, 542

U.S. at 232; see also, Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).

Moreover, this case is readily distinguishable from Anthony v. Cambra, 236 F.3d

568, upon which the Court of Appeals relies.  In Anthony, the only error was by the district court,

---

[6] Moreover, the "clear error"of the magistrate judge is more apparent, if at all, in hindsight. The Advisory Committee Notes for Rule 4, in addition to the guidance relied upon by the Ninth Circuit, also suggest that dismissal is not the only alternative for a defective petition, but that the court may, in the alternative, make such other orders as appropriate.  "Rule 4 authorizes the judge to take such other action as the judge deems appropriate.  This is designed to afford the judge flexibility in a case where either dismissal or an order to answer may be inappropriate."  Advisory Comm. Notes, 1976.  Appointing counsel with the idea that counsel would protect petitioner's filing dates would seem to be appropriate.  Further, the magistrate judge's procedure conforms to the experience in this district when appointing counsel-- that the overwhelming number of petitions are thereafter the subject of amendment in any event to further elucidate the claims made, or to add new, unexhausted claims.  Perhaps the magistrate judge thought that it made little sense to have the petitioner, pro se, make the initial stab at amendment.  Finally, as respondent notes in his post-remand briefing, the idea of using the summary dismissal procedures of Rule 4 as a *protection* to petitioner is not one which would have stood out from the words of the Rule.

1   which dismissed petitioner's original mixed habeas petition without opportunity to amend.  The

2   Court of Appeals found that the district court thereafter properly exercised its equitable power to

3   accept petitioner's second habeas petition nunc pro tunc to the date of the original filing.  Id., 236

4   F.3d at 574.  Here, in contrast, the magistrate judge's error[7] must be viewed within the context of

5   the errors made by petitioner and his counsel.  These combined errors, coupled with the

6   undersigned's disinclination to decide cases for reasons unaddressed by the parties, or search the

7   record for uncomplained errors a magistrate judge may have made, led the undersigned to reject

8   the option of equitable tolling.  Rather, in deference to Congress' clear intent to apply heightened

9   pleading standards within an abbreviated statute of limitations,[8] this court found the initial

10   petition inadequate and dismissed the amended petition as untimely.

11          The court has now, however, further considered the matter, pursuant to the Court

12   of Appeals' Memorandum Order and Mandate, and the parties' supplemental briefing.  The

13   remand directed the undersigned to exercise his equitable discretion in determining whether to

14   correct the found error of the magistrate judge.  Gauging that equitable discretion on the same

15   standards which are applicable for applying equity in habeas proceedings, i.e., equitable tolling,

16   seems appropriate.  It also appears appropriate, as suggested by the remand order, to take a peek

17

18          [7] "The rule of mandate requires that, on remand, the lower court's actions must be consistent
     with both the letter and the spirit of the higher court's decision.  See Quern v. Jordan, 440 U.S. 332,
19   347, n. 18, 99 S.Ct. 1139 [] (1979)."  Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1214 (C.D. Cal.
     2005).
20

21          [8] Congress' intent is clear that petitioners, including those in pro se, adhere to the AEDPA
     statute of limitations.  As this court earlier stated:
22
            [D]espite the propensity for [habeas] petitions to be filed pro se, Congress enacted
23          a statute of limitations and heightened pleading requirements . . . [A]dopting the
            magistrate judge's findings and recommendations would, contrary to the will of
24          Congress, effectively permit pro se litigants to slide into court under the one-year
            radar by waiting until the eleventh hour to file vague petitions, which could later be
25          modified by amendment.  This Court cannot render a decision that so clearly
            re-writes the law.

26   Docket No. 35, at 7.

at the merits in order to ascertain whether a dismissal would work a "harsh result," i.e., the facial

possibility of glaring AEDPA error committed such that petitioner was subjected to a trial stained

with fundamental unfairness, insufficient evidence or actual innocence of a convicted petitioner.

Equitable relief is appropriate under the following circumstances:

> Our precedent permits equitable tolling of the one-year statute of limitations on
> habeas petitions, but the petitioner bears the burden of showing that equitable
> tolling is appropriate. Espinoza-Matthews, 432 F.3d at 1026. The petitioner must
> establish two elements: "(1) that he has been pursuing his rights diligently, and (2)
> that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo,
> 544 U.S. 408, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005).

Rasberry v. Garcia, supra, 448 F.3d at 1153. This Circuit has emphasized that the "extraordinary

circumstance" must be beyond the petitioner's control, see, e.g., Brambles v. Duncan, 412 F.3d

1066, 1069-1070 (9th Cir. 2005), citing Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999),

which is satisfied by court error that affirmatively misled petitioner, Ford v. Pliler, 590 F.3d 782,

786-787,  (9th Cir., Dec. 30, 2009).

No one contests that petitioner was acting with adequate dispatch in filing his

petitions in state court and then in federal court. However, as noted before, the initial mistake by

petitioner in not attaching what petitioner did not attach cannot be laid at the doorstep of the

court. While mistakes do happen, the mistake was not outside the control of petitioner. Then

assuming as the undersigned must under the law of the case, that the magistrate judge committed

error by not sufficiently protecting petitioner from the consequences of this mistake,  the

undersigned looks to the actual prejudice which accrued from the error. There is little to see.

The record suggests no reason to believe that if the magistrate judge had

dismissed the petition with leave to amend pursuant to Rule 4[9], and appointed counsel at the

same time, that any different result would have occurred. In all probability, counsel would have

asked for the extensions which she did; they would have been granted as they were, and the same

---

[9] Rule 4 requires a defective petition to be dismissed: "the judge must dismiss" an inadequate petition.

11

1   result would have obtained – the amended petition would not have related back to the initial

2   defective filing.  Indeed, the magistrate judge's initial order, and orders thereafter, tasked counsel

3   with looking at the petition to determine what needed to be accomplished in the way of

4   amendment, and filing that amendment.  This is the functional equivalent of dismissing the

5   initial, defective petition and requiring amendment. The undersigned will not find that it was

6   inequitable to appoint counsel at the time counsel was appointed at the inception of the case, or

7   that a two step process is required, i.e. order the pro se petitioner to amend the petition on his

8   own, and only then appoint counsel (who will then probably desire to amend the petition again).

9   Nor will the undersigned find prejudicial error because the activities of appointed habeas counsel

10  were not sufficiently monitored by the court.

11        Review of the merits of the amended petition has proved the decisive factor in not

12  exercising discretion to accept the amended complaint filed as of a timely date *nunc pro tunc*.  In

13  his amended petition, petitioner makes four of the five claims listed in his initial petition,[10]

14  specifically:

15      Claim 1:      Jury Instructions Failed to Define Imperfect Self-Defense in
                     Violation of the 5th and 6th Amendments
16
17      Claim 2:      Due Process Forbids Firearm Enhancement in Addition to Special
                     Circumstance
18

19      [10]  As initially listed (Petition, Docket No. 1, at 2):

20      Claim 1:      Jury instructions failed to define imperfect self-defense in violation
                     of 5th and 6th Amendments
21      Claim 2:      Due process forbids firearm discharge enhancement in addition to
                     special circumstance punishing same act with sentence of life without
22                   possibility of parole
        Claim 3:      Gang enhancements are not supported by evidence in violation of
23                   Due Process
        Claim 4:      Blakely/Booker challenge to denial of jury trial on aggravating
24                   sentencing factors
        Claim 5:      Drive-by shooting special circumstance is overbroad in violation of
25                   the 5th, 8th & 14th Amendments

26  Claim 4 was abandoned in the amended petition.  <u>See</u> <u>generally</u>, Docket No. 22.

12

| | |
|---|---|
| Claim 3: | Gang Enhancements are not Supported by Substantial Evidence in Violation of Due Process |
| Claim 4: | Drive-by Shooting Special Circumstance is Overbroad in Violation of the 5th, 8th and 14th Amendments |

The first claim relies on evidence suggesting petitioner acted in imperfect self-defense, and asserts error in the omission of an imperfect self-defense instruction to the jury which would have supported a manslaughter, rather than murder, conviction. Petitioner contends that while the jury was instructed on an ordinary self-defense theory, which it rejected, no instruction was given which reflected the defense's alternate theory that petitioner had a good faith but unreasonable belief he was acting in self defense. The jury rejected the only other basis (heat of passion) for reaching a voluntary manslaughter conviction.

Petitioner argues, under Conde v. Henry, 198 F.3d 734 (9th Cir. 1999), that he was entitled to instructions on both, albeit inconsistent, theories. The Court of Appeals in Conde found that the trial court erred, inter alia, in refusing to permit Conde's attorney from making a closing argument or instructing the jury on the defendant's theory of the case, and giving instructions to the jury that did not require a finding on every element of the offense. "Together, these errors deprived the petitioner of effective assistance of counsel, due process and trial by jury on every element of the charged crime." Conde, 198 F. 3d at 741. In the instant case, the California Court of Appeal concluded that, even if the evidence could be interpreted to support an imperfect self-defense instruction, the failure of the trial court to so instruct sua sponte was harmless. See People v. Wu, 2005 WL 3387732, *8-11 (3rd Dist. 2005). This assessment warrants further consideration by this court, but upon analysis, the argument will clearly fall short.

First of all, it is not at all clear that in a non-capital case, the failure of the trial court to *sua sponte* give a defense instruction will ever state a cognizable claim. James v.Reese, 546 F.2d 325, 327 (9th Cir. 1976). However, the Ninth Circuit, in a non-AEDPA context has also stated that it may if the unrequested instruction nevertheless encompassed the theory of the

defense.  <u>Bashor v. Risely</u>, 730 F.2d 1228, 1240-41 (9th Cir. 1984)  <u>But see</u> <u>Solis v. Garcia</u>, 219

F.3d 922, 928-929 (9th Cir. 2000) noting that the Supreme Court had reserved the issue of *sua*

*sponte* instruction in a non-capital case.  In an AEDPA context, unless the Supreme Court has

pronounced on the issue, habeas relief is unavailable, § 2254(d), and an express indication by

that court that the issue is open by definition means that the court has not ruled.

Even assuming that the failure to *sua sponte* instruct could state a federal claim,

the purported error was not prejudicial.  The California Court of Appeal fully considered the

argument.

> Any error in failing to instruct on imperfect self-defense is subject to the harmless
> error test articulated in People v. Watson (1956) 46 Cal.2d 818, 836. ( People v.
> Blakeley, supra, 23 Cal.4th at p. 93; Randle, supra, 35 Cal.4th 987.) Under this
> test, a conviction may be reversed for a failure to instruct "only if, 'after an
> examination of the entire cause, including the evidence' (Cal. Const., art. VI, §
> 13), it appears 'reasonably probable' the defendant would have obtained a more
> favorable outcome had the error not occurred." ( People v. Breverman, supra, 19
> Cal.4th at p. 178.) We do not find such a reasonable probability here.

> There was some evidence in this case from which the jury could have determined
> Hoa was actually armed with a gun, reached past the driver Ha, and shot the gun
> at defendants. Defendant Vu testified to his actual belief this was the case when
> he testified he saw the passenger of the red car pointing a chrome gun, and
> immediately saw a flash and heard a bang. If such evidence was believed, no jury
> could have found defendant Vu's action in shooting back unreasonable. The jury
> would have found defendant Vu acted in self-defense and the homicide would
> have been justifiable.

> *10 If, on the other hand, the jury concluded Hoa was not actually armed with a
> gun there was virtually nothing to support defendant Vu's belief that Hoa was or
> might have been armed with a gun. The doctrine of imperfect self-defense is
> narrow, requiring defendant have an actual belief in the need for self-defense. ( In
> re Christian S., supra, 7 Cal.4th at p. 783.) Defendant Vu points to the evidence
> that Hoa was talking on a cell phone as supporting his actual, but mistaken, belief.
> However, Ha only testified Hoa was talking on a cell phone prior to the time of
> the shooting. Ha could not remember if Hoa was talking on the cell phone at the
> time of the shooting. There was physical evidence that Hoa was reaching
> horizontally across Ha at the time Hoa was shot in the right hand, but the evidence
> suggests Hoa was not holding the cell phone at that time. The cell phone found in
> Ha's car was found on the center console. Critically, defendant Vu did not just
> testify he saw something in Hoa's hand that he believed to be a gun. Defendant
> said as soon as he saw the gun, he saw a flash and heard a bang. Light reflecting
> off a metallic cell phone might account for the flash, but there is no suggestion in
> the evidence the cell phone rang and that the ring-tone sounded like a gun shot or
> that there was any other noise in the area at the time that defendant Vu could have

believed was a gunshot. Defendant Vu also testified he did not recognize anyone in the red car. Therefore, there could be no basis for an argument he believed he saw a gun and imagined a shot because his mind was clouded with trepidation because he thought the occupants of the red car were rival gang members. Prior to his seeing the gun, the flash, and hearing the bang, defendant Vu did not testify to being angry, scared, or under any other emotional or mental stress. It would be exceedingly unlikely a jury would credit defendant Vu's bare assertion that he believed Hoa was armed, even though it turned out he was not.

Indeed, the credibility of such a claim by defendant Vu was further weakened by defendant Vu's specific denial of any self-defense when questioned after his arrest. Instead defendant Vu claimed he was not even present at the shooting. Defendant Vu tried while in jail, and to some extent apparently succeeded, to arrange an alibi defense from his girlfriend. Defendant Vu only raised self-defense when the case got into court.

The credibility of defendant Vu's belief that Hoa was armed and he therefore had the actual but unreasonable belief to defend was further weakened by the position of the Nissan and defendant Vu at the time of the shooting. Consistent with the prosecutor's theory that defendant Vu was the aggressor and with the expert testimony of how Asian gangs commit drive-by shootings, defendant Vu as the passenger in the Nissan, was closest to the victims when he shot into or at the Acura's driver's side. Defendant Vu, unlike Hoa, had a clear shot and did not have to shoot across his driver defendant Tran. While the evidence of the positions of the two cars is not dispositive of whether defendant Vu had a credible belief that Hoa was armed and shot at him first, the fact that defendant Vu was in an arguably superior shooting position does tend, when considered with the rest of the evidence, to call into question his claim of unreasonable self-defense. The credibility of defendant Vu's claim also was undermined by the testimony of witnesses who had no involvement in the incident other than hearing shots and observing what was occurring. These uninvolved witnesses testified the gunshots were "the same" and "uniform," indicating that only one gun was fired.

*11 Moreover, although the jury was not given a separate instruction on imperfect self-defense, the jury was instructed with CALJIC No. 8 .40 and CALJIC No. 8.50, both of which state there is no malice and the offense is manslaughter if the act causing death is done "in the actual but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury." The jury was not left completely without legal guidance on this doctrine and could have considered imperfect self-defense under these instructions.

We are convinced the failure to give imperfect self-defense instructions was harmless.

People v. Vu, 2005 WL3387732 *9-11[11]

---

[11] This claim does not involve a situation where the defense asked for an instruction on a theory of the defense, and such an instruction was refused.  Even if it did, the alleged error would

1    Especially, because Vu received the essence of the instruction he claims should

2 have been given *sua sponte*, the undersigned sees no harshness or inequity from not more fully

3 considering this claim, subject to AEDPA unreasonableness on its merits.

4    Petitioner's second claim asserts violation of the state and federal proscriptions

5 against double jeopardy, premised on petitioner's punishment under both the drive-by shooting

6 murder special circumstance and the personal firearm discharge enhancement.  It appears, upon

7 preliminary review, that the Court of Appeal properly rejected this claim, reasoning in pertinent

8 part:

9       [T]he drive-by shooting murder special circumstance and the personal firearm
        discharge enhancement each require proof of a fact which the other does not.  The
10      drive-by shooting murder special circumstance requires the murder result from the
        discharge of a firearm from a motor vehicle. The criminal responsibility for such a
11      murder is not limited to the actual shooter.  On the other hand, the firearm
        discharge enhancement requires personal discharge of the firearm causing great
12      bodily injury or death.  And the shooting need not necessarily be from a motor
        vehicle.  Moreover, as we have explained, the Legislature has made it clear it
13      intends the personal firearm discharge enhancement to be an additional,
        cumulative punishment.

14

15 People v. Wu, 2005 WL 3387732, *28.  Given the apparent correctness of this analysis under

16 state law, petitioner's second claim lacks merit.  Moreover, if the legislature has expressly

17 intended a punishment to be cumulative, as the Court of Appeals has interpreted state law, such

18 cumulative punishment does not violate double jeopardy prohibitions. Missouri v. Hunter, 459

19 U.S. 359, 368-369 (1983).

20    The third claim asserts violation of due process on the ground that the jury found

21 true a gang enhancement that was not supported by substantial evidence.  Petitioner argues that

22

23 be subject to a Brecht harmless error review, i.e., substantial and injurious effect on the verdict.
   Brecht v. Abrahamson, 507 U.S. 619 (1993).  While at one time Ninth Circuit jurisprudence thought
24 such an error to be immune from harmless error review, Conde v. Henry, 198 F.3d 734, 739 (9th Cir.
   1999), Ducket v. Godinez, 67 F.2d 734, 743 (9th Cir. 1995), United States v. Escobar de Bright,
25 United States v. Escobar de Bright, 742 F.2d 1196, 1202 (9th Cir. 1984), the advent of AEDPA has
   made all such errors subject to harmless error review.  See  Beardslee v. Woodford, 358 F.3d 560,
26 577-578 (9th Cir. 2004), a case analyzing an alleged failure to instruct on a defense, and
   distinguishing the above cases based on its AEDPA context.

the jury's finding improperly rested only on the conceded speculation of Detective To.  See Docket No. 22, at 18 (quoting To's testimony).  The Court of Appeal rejected this contention, finding that the record as a whole supported the finding.  People v. Wu, 2005 WL 3387732, *21-23.  Because this analysis rests on the appellate court's "reasonable inference," id. at 22, further review by this court is not warranted as AEDPA would in all probability sustain the finding of the Court of Appeal.  Moreover, the error here only goes to sentence enhancements in addition to life without parole.  For practical purposes, a grant on this claim would be of no real effect.  This is the antithesis of a harsh result.

Petitioner's last claim asserts that California's drive-by shooting special circumstance is overbroad in violation of the Fifth, Eighth, and Fourteenth Amendments, because it necessarily incorporates non-special circumstance drive-by shooting murders.  Petitioner argues that "[t]he drive-by shooting allows the jury to find a murder to be in the first-degree subjecting the defendant to a sentence of 25 years to life [but] [t]he same fact then allows a jury to find a defendant eligible for death or life in prison without the possibility of parole," thereby failing to "provide guidance to the jury on how to distinguish between a first-degree murder and a death eligible special circumstance murder."  Docket No. 22, at 19-20.  Petitioner contends the prosecutor argued that the same theory applies to both, and therefore that a finding of first degree drive-by murder necessarily proves the special circumstance true.  Id. at 19.

The appellate court found that "[d]efendant Vu acknowledges his argument has been rejected in People v. Rodriguez (1998) 66 Cal. App. 4th 157, 164, 172-174 [no Eighth Amendment violation if jury necessarily found that defendant intended to kill].)  For the reasons expressed in that opinion, we also reject defendant's claims."  People v. Wu, 2005 WL 3387732, *23.  The Rodriguez analysis has been endorsed by courts within this circuit, see, e.g., Beltran v. Runnels, 2009 WL 1279346 (C.D. Cal. 2009), *19-21, quoting Cabana v. Bullock, 474 U.S. 376, 386, 106 S.Ct. 689 (1986), abrogated on other grounds by Pope v. Illinois, 481 U.S. 497, 503, n. 7, 107 S.Ct. 1918 (1987) ("The Supreme Court has held that '[i]f a person sentenced to death in

fact killed, attempted to kill, or intended to kill, the Eighth Amendment is not violated by his or her execution'"). There exists no established Supreme Court authority finding that the special circumstances law of California involving the special circumstances involved in this case overbroad. The federal courts would necessarily be issuing an opinion of first impression.

A dismissal based on the statute of limitations is not bound to work an undue hardship to petitioner, or a "harsh result," in that his claims lack probable merit.

CONCLUSION

With the clear understanding of what discretion this District Court Judge has, it is the order of this court that any "clear error" of the magistrate judge does not warrant acceptance of the amended petition *nunc pro tunc* to a time at which it would be timely filed. Therefore, the dismissal previously entered shall be the order of this court. The petition is dismissed.

Dated: June 25, 2010

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE